1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                        **DISTRICT OF NEVADA**

6

7   JOHN MARSHALL,                    )
                                      )          2:06-CV-0536-RCJ-GWF
                  Plaintiffs,         )

8                                     )

9                vs.                  )          **ORDER**
                                      )
10  JAMES A. GRAVITT, *et al.*,       )
                                      )
    Defendants.                       )
11  _____  )

12

13          This matter comes before the Court on the following motions: (1) Plaintiff John

14  Marshall's ("Plaintiff") Motion for Default Judgment and to Disqualify Beckley Singleton,

    Chtd. (#66); (2) Defendant Dawn Reeps's ("Reeps") Countermotion for Sanctions
15
    (#69, 86); (3) Defendant TransUnion, Inc's Countermotion for Sanctions (#85); (4) Plaintiff's
16
    Motion to Stay Proceedings (#110); (5) Defendant Reeps's Motion for Judgment on the
17
    Pleadings (#96); (6) Defendant Reeps's Rule 11 Motion for Sanctions (#97); and (7)
18
    Plaintiff's Countermotion for Rule 11 Sanctions (#108).  The Court has considered the
19
    motions, the pleadings on file, and oral arguments on behalf of the parties and issues the
20
    following Order.
21
                                **BACKGROUND**
22
            Plaintiff filed with this Court his Motion for a Default Judgment Against Defendant
23
    Reeps and to Disqualify Beckley Singleton, Chtd. from representing Defendant TransUnion,
24
    Inc. ("TransUnion").  In addition, Plaintiff also filed a Motion for Sanctions and a Motion to
25

Stay Proceedings.  In her Response to Plaintiff's Motion for Default Judgment, Reeps included her Countermotion for Sanctions.  In addition, Defendant Reeps filed a Motion for Judgment on the Pleadings and a separate Motion for Sanctions unrelated to the request for sanctions in her Response to Plaintiff's Motion for Default Judgment.  Defendant TransUnion has opposed Plaintiff's Motion to Disqualify Beckley Singleton, and has also filed its own Motion for Sanctions against Plaintiff.

Plaintiff's ex-wife, Ellen, enrolled their son in the Swift River Academy, "a private college preparatory therapeutic boarding school."  This controversy arises because Plaintiff was charged on his credit report with unpaid Swift River bills in excess of $30,000, for which Plaintiff claimed no responsibility.  On May 1, 2006, Plaintiff filed his lengthy Complaint (#1) with this Court (Judge Hunt),[1] alleging forty-seven claims for relief against over a dozen Defendants in relation to the problems in his credit report.  Although Plaintiff's Complaint lacks clarity, he basically alleges that the non-reporting agency Defendants in this action incorrectly reported information to the various credit reporting agencies.  Plaintiff further alleges that the actual reporting agencies themselves failed to comply with the Fair Credit Reporting Act ("FCRA"), and that Reeps, a TransUnion employee, is liable for her actions while working at TransUnion.  While Judge Hunt dismissed several claims against some Defendants, numerous claims against other entities remain.

Plaintiff asks the Court to enter a default judgment against Defendant Reeps even though Judge Hunt has already refused to do so and actually sanctioned Plaintiff

---

[1] On October 3, 2006, Judge Hunt recused himself from this case.

$1,000 for requesting such default judgment.  Plaintiff has appealed Judge Hunt's Order and asks this Court to stay the proceedings until the Ninth Circuit hears his appeal.  With respect to the Motions currently before the Court, the Defendants accuse Plaintiff of doing nothing more than filing frivolous claims with this Court in hopes to increase his settlement.  Because several motions and countermotions are currently before the Court, the Court addresses each in turn.

## DISCUSSION

### I.  Plaintiff's Motion for Default Judgment and to Disqualify Beckley Singleton

Plaintiff asks this Court to enter default judgment against Defendant Reeps.  Plaintiff also asks the Court to disqualify Beckley Singleton from representing Defendant TransUnion in this case.  For the reasons stated below, the Court denies Plaintiff's requests.

### A.  Plaintiff's Request for Default Judgment

Plaintiff argues that Defendant Reeps "has defaulted, and in inquest should be scheduled for her damages." (#66-1 at 15.)  According to Plaintiff, he mailed Reeps a summons and a copy of his Complaint on May, 1, 2006.  Plaintiff now argues that Reeps never responded and therefore defaulted.  Plaintiff has already filed this same motion with this Court (Judge Hunt).  Judge Hunt denied Plaintiff's motion, observing that "there have been answers by several . . . Defendants, which would, of course, deny default judgment against those Defendants." (#58.)  Plaintiff then filed "Plaintiff's Affidavit of Default Judgment Against Defendant Dawn Reeps." (#60.)  After reading Plaintiff's Motion, Judge Hunt issued an order striking Plaintiff's "affidavit" from the docket and sanctioned Plaintiff for "filing spurious documents" and for "bringing chaos to the Court's docket entries."

(#64.)  In issuing his order, Judge Hunt noted that Defendant Reeps had in fact filed an Answer to Plaintiff's Complaint, and thus the Court could not issue a default order against her.  Through Judge Hunt, this Court has already denied Plaintiff's motion.  Therefore, the Court denies Plaintiff's Motion for Default Judgment.

### B.    Defendant Reeps's Countermotion for Fees and Costs

In her Response to Plaintiff's Motion for Default Judgment, Reeps asks this Court to impose sanctions upon Plaintiff for his apparent disregard for the Court's prior Order.  Specifically, Reeps asks the Court to award her $916.50 in fees and costs because Plaintiff's Motion is frivolous.  Plaintiff has already filed two motions for default judgment against Reeps.  However, during oral argument Plaintiff sufficiently demonstrated that he did not file his Motion for Default Judgment in bad faith.  Plaintiff believed Judge Hunt's Order was incorrect and has appealed that decision to the Ninth Circuit.  Accordingly, the Court denies Defendant Reeps's Countermotion for Fees and Costs.

### C.    Plaintiff's Request to Disqualify Beckley Singleton

Plaintiff also argues that this Court should disqualify Beckley Singleton because the firm represents two Defendants in this case—TransUnion and Experian Information Solutions, Inc. ("Experian").  While Plaintiff does not allege that this representation is a conflict of interest, he argues that "Beckley Singleton may have a future conflict of interest that impedes its duty of loyalty to its individual defendant clients."  Plaintiff bases his motion on the Nevada Rules of Professional Conduct and case law

interpreting those rules.  Defendant Beckley Singleton asks the Court to dismiss Plaintiff's motion for three reasons: (1) Plaintiff lacks standing to seek Beckley's disqualification; (2) no conflict of interest exists in this case; and (3) even if there were a conflict, Beckley's clients have expressly waived such conflict as allowed in the Nevada Rules of Professional Conduct.

### 1.      Plaintiff Lacks Standing

As a general rule, only former and current clients have standing to ask a court to disqualify counsel on the basis of a conflict of interest.  *See, e.g., Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998).  Plaintiff's only contention to refute Blakely's standing argument is that "Plaintiff's position is an exception to the [general] standing rule" and that "[i]n the hundreds of jury trials [Plaintiff has] conducted, [Plaintiff] has never seen one law firm represent two clients whose interest may be adverse to one another."  (#88 at 7-8.)  In addition, while Plaintiff states that he cannot prove an actual conflict of interest exists, he worries that one may surface in the future that will confuse the jury and assault this Court's integrity.  However, courts are clear that to have standing to file a motion to disqualify counsel, the movant must demonstrate an injury that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Colyer v. Smith,* 50 F. Supp. 2d 966, 971 (C.D. Cal.1999) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).  Because Plaintiff's only allegations are that potential conflicts "might" arise in the future, he fails to meet the

actual or imminent standard.  Accordingly, the Court finds that Plaintiff lacks standing to file his Motion.

2.   <u>Plaintiff Cannot Identify an Actual Conflict of Interest</u>

Even if the Court were to grant Plaintiff standing to bring a motion to disqualify counsel, the Court dismisses Plaintiff's Motion because Plaintiff fails to identify an actual conflict of interest.  Courts have stated that a "motion to disqualify should be accompanied by declarations and admissible evidence sufficient to establish the factual predicate upon which the motion depends." *United States v. Walker River Irrigation District*, No. 3:73-CV-127 ECR-RAM, 2006 WL 618823, at *3 (D. Nev. Mar. 10, 2006) (quoting *Colyer*, 50 F. Supp. 2d at 967).  Plaintiff has failed to present any evidence of an actual conflict.  Rather, Plaintiff only refers to "potential future conflicts" and his observations as an "experienced litigator."  As noted above, Plaintiff has not demonstrated an actual or imminent conflict; thus, the Court refuses to disqualify Beckley Singleton from this action.

3.   <u>Beckley Singleton's Clients Have Waived any Conflicts</u>

Even if Plaintiff did have standing and could demonstrate an actual and imminent conflict, Beckley's clients have waived any conflicts.  The Nevada Rules of Professional Conduct provide that a lawyer may represent clients notwithstanding a conflict of interest if "[e]ach affected client gives informed consent, confirmed in writing."  Nev. Rules of Professional Conduct Rule 1.7(b)(4).  Both TransUnion and Experian have expressly waived any conflicts in writing.  In addition, each company is

Page 6 of  20

represented by independent counsel in this matter.  Accordingly, Plaintiff has failed to

demonstrate to the Court that a conflict of interest exists, and the Court therefore

dismisses Plaintiff's Motion to Disqualify.


**D.      Defendant TransUnion's Countermotion for Sanctions**

Defendant TransUnion has asked the Court to sanction Plaintiff for filing his

motion to disqualify its counsel.  TransUnion asks that, at a minimum, the Court award

it fees and costs in preparing its Response.  TransUnion does not bring this request

pursuant to Rule 11; rather, it asks the Court to exercise its inherent power to impose

sanctions.  Because TransUnion provides sufficient evidence to warrant sanctions, this

Court awards sanctions in the amount of $250.

1.      Standard for Sanctions Pursuant to Court's Inherent Power

District courts have inherent powers to impose sanctions on counsel and parties.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47 (1991).  A district court must exercise its

inherent power to impose sanctions with restraint and discretion.  *Id.* at 45; *Roadway*

*Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from

direct democratic controls, they must be exercised with restraint and discretion.").  The Ninth

Circuit has held that sanctions under a court's inherent powers are available if the court finds

bad faith or conduct tantamount to bad faith.  *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir.

2001).

TransUnion argues that Plaintiff filed his Motion to Disqualify in bad faith. To support its argument, TransUnion states that before Plaintiff even filed his Motion, TransUnion informed Plaintiff that he lacked standing and could not bring such a motion. In addition, TransUnion alleges that Plaintiff acted in bad faith because after filing his Motion, Plaintiff attended a status conference with Magistrate Judge Foley where Judge Foley asked Plaintiff if he had any outstanding motions, to which Plaintiff responded no. Plaintiff also told Judge Foley that he had not filed any new motions. TransUnion argues that this indicates Plaintiff's bad faith because he somehow wanted to avoid Judge Foley ruling on the motion so he could create more chaos in the docket. Plaintiff responded no to Judge Foley knowing that several motions were on the Court's docket. Plaintiff never retracted his motions, and he filed pleadings with regards to those motions shortly after telling Judge Foley that he did not have any motions pending in this action. Because TransUnion provides sufficient evidence to warrant sanctions, this Court awards sanctions in the amount of $250. The Court therefore orders Plaintiff to pay $250 in sanctions no later than thirty days from the date of this Order.

**II.      Plaintiff's Motion to Stay Proceedings**

Plaintiff has filed a notice of appeal to the Ninth Circuit Court of Appeals appealing this Court's (Judge Hunt) August 28, 2006 Order striking Plaintiff's second Motion for Default Judgment and imposition of sanctions. Specifically, Plaintiff asks the Court to stay its hearing on Defendant Reeps's Motion for Judgment on the Pleadings until the Ninth Circuit issues its decision. Plaintiff bases his Motion on a concern that because this Court lacks jurisdiction over Defendant Reeps, he fears the

1

2

3

Court will dismiss his claims based on lack of personal jurisdiction.  However, the
Court may exercise jurisdiction over Reeps and therefore denies Plaintiff's Motion to
Stay pursuant to the following analysis.

4

### A.     The August 28, 2006 Order is Interlocutory

5

6

7

8

9

10

11

12

13

14

15

16

28 U.S.C. § 1291 provides that the "courts of appeals . . . shall have jurisdiction of
appeals from all final decisions of the district courts of the United States . . . except where a
direct review may be had in the Supreme Court."  The Ninth Circuit has repeatedly held that
an order denying entry of default judgment is not a final judgment subject to immediate
appeal when the case is not final.  *See, e.g., Barroga v. Bd. of Admin. Cal. Pub. Ret. Sys.*, 168
Fed. Appx. 777 (9th Cir. 2006).  Plaintiff also argues that the Court should stay the
proceedings because Plaintiff meets the standards necessary to obtain a preliminary
injunction.  However, Plaintiff fails to provide any evidence as to how he can meet such a
standard.  Even if the Court were to stay its rulings, that decision would be in vain because as
discussed above, the Ninth Circuit will not exercise jurisdiction over Plaintiff's interlocutory
appeal.[1]  Accordingly, the Court denies Plaintiff's Motion to Stay.

17

### III.    Defendant Reeps's Motion for Judgment on the Pleadings

18

19

20

21

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Reeps asks this
Court to enter judgment in her favor on Plaintiff's seventh through twelfth claims for
relief, thus dismissing Reeps from this action.  Plaintiff objects to Reeps's Motion and
asks the Court to sanction Reeps for filing its Motion.  As explained below, because

22

23

24

[1] Both TransUnion and Equifax have filed Motions to Dismiss Plaintiff's Interlocutory Appeal with the
Ninth Circuit.

25

Plaintiff has failed to sufficiently plead or clearly state these claims, the Court grants

Reeps's Motion for Judgment on the Pleadings with leave to amend.

### A.    Standard

"Judgment on the pleadings is proper when, taking all the allegations in the pleadings

as true, the moving party is entitled to judgment as a matter of law." *Torbet v. United*

*Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002); *Int'l Techs. Consultants, Inc. v.*

*Pilkington PLC*, 137 F.3d 1382, 1384 (9th Cir. 1988) (holding that a claim cannot be

dismissed under Rule 12(c) if the court finds that, taking all allegations in the pleadings as

true, plaintiff is entitled to a remedy).   The standard under Rule 12(c) is "virtually identical"

to the standard for evaluating a motion to dismiss under Rule 12(b)(6).  *See, e.g.,*

*Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987).  Although the plaintiff "enjoys

the benefit of all inferences that plausibly can be drawn from well-pleaded allegations [in] the

complaint," a court should grant a defendant's motion for judgment on the pleadings when it

"appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will

be unable to prove any set of facts that would justify relief." *Id.*

### B.    THE FCRA—Counts Seven and Eight

Defendant Reeps bases her Motion on one sole argument—the FCRA grants a

private right of action against Credit Reporting Agencies ("CRAs") and no other

individuals or entities.  However, although some provisions in the FCRA apply only to

CRAs, many do not.  In 1968 Congress, recognizing the importance of an accurate and

fair credit reporting system, enacted the FCRA.  In particular, Congress found that

"there is a need to insure that consumer reporting agencies exercise their grave

responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).  The FCRA, therefore, provides an exhaustive list of permissible uses of credit reports, including, among others, by a consumer's written permission, § 1681b(a)(2); in connection with credit extension, § 1681b(a)(3)(A), or other business transactions; and, in connection with insurance underwriting, § 1681b(a)(3)(C).

Entities that violate the FCRA are subject to both civil liability and criminal penalty.  As originally implemented, the FCRA provided for a civil action against "any consumer reporting agency or user of information," which negligently or willfully failed to comply with the FCRA's requirements.  *See* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, Div. A., Title II, § 2412(a), (c), and (d). Subsequently, Congress amended the FCRA through the Consumer Credit Reporting Reform Act of 1996 to impose civil liability on "any person" who willfully or negligently violates the FCRA.  *Id.* at § 2401; 15 U.S.C. §§ 1681n; 1681o.  The Act defines the term "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).  The Ninth Circuit has further explained that those entities defined as persons must also be a CRA, a user of credit information, or a furnisher of credit information.  *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).  Thus, contrary to Defendant Reeps's claims, the FCRA may impose liability on entities and individuals other than CRAs.  Defendant Reeps cites only one unpublished case to support her conclusion that a consumer may only

1   bring an action for FCRA liability on a CRA: *Batdorf v. TransUnion*, No. C 00-0501

2   CRB, 2000 WL 635455, at \*2 (N.D. Cal. May 8, 2000).  However, *Batdorf* refused to

3   impose liability upon the CRA's employees not solely because they were employees,

4   but because the plaintiff could not present any evidence that the employees actually

5   participated in reporting the allegedly false information.  *Batdorf* only stands for the

6   proposition that employees cannot be held liable solely because they are employees.  *Id.*

7   However, as discussed below, the Court nevertheless dismisses Plaintiff's FCRA

8   claims as they relate to Reeps.

9       To state a claim under the FCRA, Plaintiff must allege that Reeps falls within

10  the class of defendants subject to FCRA liability—that is, the defendant is a CRA, user,

11  or furnisher of information who fails to comply with the FCRA.  Although Plaintiff

12  appears to allege that Reeps is actually a CRA, he also alleges liability based upon

13  provisions that apply to furnishers of information.  Plaintiff's Complaint simply states

14  that Reeps is a CRA employee, and therefore liable.  However, an allegation that Reeps

15  is a CRA employee fails to state with sufficient clarity how Reeps qualifies as one of

16  the three types of defendants subject to FCRA liability.

17

18      The liability imposed under § 1681n and § 1681o on any person who willfully

19  or negligently fails to comply with the FCRA's requirements "do[es] not apply to any

20  violation of subsection (a) of [§ 1681s-2]."  15 U.S.C § 1681s-2(c).  The FCRA

21  expressly provides that § 1681s-2(a), the duty of furnishers of information to provide

22  accurate information, "shall be enforced exclusively as provided under section 1681s of

23  this title by the Federal agencies and officials and the State officials identified in

24

25                                  Page 12 of  20

section 1681s of this title." 15 U.S.C. § 1681s-2(d).  Thus, the FCRA bars consumers

from bringing a private cause of action against a furnisher of credit information for

failing to provide accurate information because the authority to pursue such claims falls

within the province of federal and state agencies.  *Nelson v. Chase Manhattan*

*Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

Plaintiff's Complaint confusingly cites numerous sections to which he claims

liability.  Plaintiff's Complaint does not cite to the sections to which he believes Reeps

is liable, but rather simply incorporates by reference the previous Counts against the

CRAs.  However, some of those sections impose liability upon CRAs while others

apply to furnishers of credit information.  Plaintiff cites several times § 1681i but later

couches his allegations using the statutory language of § 1681s-2(a)(1)(B): "reporting

information after notice and confirmation of errors."  Furthermore, Plaintiff repeatedly

refers to the accuracy of the credit information, which more appropriately falls under

§ 1681s-2(a).  In an attempt to clarify his Complaint, Plaintiff later states in other

pleadings that Reeps's liability hinges upon § 1681-2(a).  (*See* #66 at 17-20.)

Plaintiff makes several allegations that Reeps failed to report accurate

information.  Although Plaintiff at one time appears to refer to Reeps as a CRA, the

duty that Plaintiff alleges Reeps violated applies to furnishers of information.

However, as noted above, the FCRA expressly states that the duty of furnishers of

information to provide accurate information under § 1681s-2(a) must be enforced

exclusively by federal and state agencies.  Furthermore, § 1681s-2(a) has been

interpreted as barring any private right of action, and no liability has been created for a

furnisher of information's failure to provide accurate information. *See Nelson,* 282

F.3d at 1059; *see also Cisneros v. Trans Union, LLC*, 293 F. Supp. 2d 1167, 1174 (D.

Haw. 2003); *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1126-27 (S.D. Cal. 2005).

Because Plaintiff has failed to plead a "cognizable legal theory" under § 1681s-2(a), the

Court cannot maintain his claims on these grounds. *Balistreri v. Pacifica Police Dep't*,

901 F.2d 696, 699 (9th Cir. 1988).  Accordingly, the Court dismisses with prejudice

Plaintiff's FCRA claims insomuch as they allege liability based upon § 1681s-2(a).

Because Plaintiff appears to allege several claims under § 1681s-2(a)(1)(B), the

Court now addresses this section.  While consumers cannot maintain a private cause of

action under 15 U.S.C. § 1681s-2(a), a private cause of action exists under § 1681s-

2(b) when furnishers of credit information fail to follow proper investigation

procedures after receiving notice of dispute pursuant to § 1681i(a)(2).  *See Nelson*, 282

F.3d at 1060.  For § 1681s-2(b) to apply, the furnisher of credit information must have

received notice from a CRA within five business days of a dispute from a consumer,

and the notice must have included all relevant information regarding the dispute

received by the agency from the consumer.  § 1681i(a)(2).  In order to trigger § 1681s-

2(b), Plaintiff must allege that Reeps received notice of a dispute from a CRA.  Thus,

Plaintiff's correspondence with Reeps, as well as with various CRAs, (which he

repeatedly discusses in his Complaint) is irrelevant.  At issue, rather, is whether

Plaintiff alleges that Reeps received notice from the CRA and then failed to make a

proper investigation.  While Plaintiff appears to allege liability based upon § 1681s-

2(b), (*See* #66-1 at 20), he fails to allege how Reeps is subject to liability for failing to respond to a formal notice of a consumer report from a CRA as required by statute.

Plaintiff cannot maintain claims under § 1681s-2(a) because Congress has stated that only governmental agencies may enforce violations under this section. Further, Plaintiff has failed to sufficiently plead his claims as they relate to § 1681-s(2)(b). Accordingly, the Court dismisses with prejudice Plaintiff's claims insomuch as they relate to § 1681s-2(a). The Court further dismisses Plaintiff's claims under 1681s-2(b) because he has not sufficiently plead the facts supporting such a claim. The Court also dismisses the remaining FCRA claims under Counts Seven and Eight because Plaintiff has failed to sufficiently allege how Reeps qualifies as one of the three types of entities subject to liability under the FCRA. However, other than any claims based upon § 1681-s(2)(a), the Court dismisses the § 1681s-2(b) claims and any other FCRA claims with leave to amend.

**C.     Nevada Consumer Reporting Act Violations—Counts Nine and Ten**

In Counts Three and Four to his Complaint, Plaintiff accuses TransUnion of violating the Nevada Consumer Reporting Act ("NCRA"). Specifically, Plaintiff alleges that TransUnion violated §§ 598C.160(1) and 598C.200. In Counts Nine and Ten, Plaintiff incorporates by reference Counts Three and Four and alleges that Reeps has violated the same NCRA provisions. The NCRA's plain language clearly states that these two sections under which Plaintiff alleges liability apply to "Reporting Agencies." Nev. Rev. Stat. Ann. §§ 598C.160(1), 598C.200. The NCRA defines Reporting Agency as a "person who, for fees, dues or on a cooperative nonprofit basis,

regularly engages in whole or in part in the business of assembling or evaluating

information regarding the credit of or other information regarding consumers to furnish

consumer reports to third parties, regardless of the means or facility of commerce used

to prepare or furnish the consumer reports." § 598C.100.   Plaintiff's Complaint refers

only to the Reporting Agency's actions and fails to state any specific actions that Reeps

undertook—other than being a Reporting Agency employee—to subject her to liability.

Plaintiff has failed to sufficiently plead the facts necessary to subject Reeps to NCRA

liability.  Accordingly, the Court dismisses Counts Nine and Ten with leave to amend.

### D.   Libel—Counts Eleven and Twelve

Just as with the other claims, Plaintiff alleges that TransUnion committed libel

and then incorporates those claims by reference into Counts Eleven and Twelve to

claim that as a CRA employee, Reeps also committed libel.  In Counts Five and Six,

Plaintiff argues that TransUnion libeled Plaintiff through publishing inaccurate

information.  In Counts Eleven and Twelve, however, Plaintiff alleges that Reeps is

liable for state libel claims.

In order to maintain a libel claim, Plaintiff must prove the following: (1) a false

and defamatory statement; (2) its unprivileged publication; (3) fault, amounting to at

least negligence; and (4) damages.  *Jordan v. State ex rel. DMV & Pub. Safety*, 110

P.3d 30, 38-39 (Nev. 2005); *Wynn v. Smith*, 16 P.3d 424, 427 (Nev. 2001).  The

Nevada Supreme Court has also looked to the definition of libel in Nevada's criminal

statutes when defining civil libel:

> Libel, in turn, is defined by Nevada statute as a malicious defamation, expressed by printing, writing, signs, pictures or the like, tending to blacken the memory of the dead, or to impeach the honesty, integrity, virtue, or reputation, or to publish the natural defects of a living person or persons, or community of persons, or association of persons, and thereby to expose them to public hatred, contempt or ridicule.

*Id.* (citing Nev. Rev. Stat. 200.510(1)).

Plaintiff bases his libel claims on Reeps's alleged inaccurate reporting and Plaintiff's FCRA claims. However, as analyzed above, Plaintiff has failed to sufficiently plead his FCRA claims. In addition, Plaintiff has made no specific allegations as to Reeps. Rather, Plaintiff's allegations against Reeps are identical to those against TransUnion. While Plaintiff has presented evidence that TransUnion knew that Plaintiff claimed that there were false statements in the information that TransUnion published about Plaintiff, this evidence does not show that Plaintiff knew these statements were false and thus acted with a "malicious defamation." Further, Plaintiff has failed to even argue that Reeps knew about Plaintiff's claims of inaccurate information. Plaintiff also argues that Reeps had a reckless disregard for whether the statements were false. To show "reckless disregard," however, Plaintiff must present "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 88 S. Ct. 1323, 1325 (1968). In this case, Plaintiff has not presented such evidence. Accordingly, the Court dismisses Plaintiff's libel claims with leave to amend.

### E.    Defendant Reeps's Separate Motion for Sanctions

1   In addition to her Motion for Judgment on the Pleadings, Reeps asks this Court to

2   impose Rule 11 sanctions upon Plaintiff for refusing to drop Counts Seven through Twelve.

3   Under Federal Rule of Civil Procedure 11, when a party submits its pleadings to the court it

4   is "certifying that to the best of the person's knowledge, information, and belief, formed after

5   an inquiry reasonable under the circumstances,"

6   (1) it is not being presented for any improper purpose, such as to harass or to
7   cause unnecessary delay or needless increase in the cost of litigation;

8   (2) the claims, defenses, and other legal contentions therein are warranted by
9   existing law or by a nonfrivolous argument for the extension, modification, or
    reversal of existing law or the establishment of new law; [and]

10  (3) the allegations and other factual contentions have evidentiary support or, if
11  specifically so identified, are likely to have evidentiary support after a
12  reasonable opportunity for further investigation or discovery

13  Fed. R. Civ. P. 11(b).  When the court determines that a party has violated one of the above-

14  mentioned Rule 11 requirements, it may levy a sanction against the party.  "A sanction

15  imposed for violation of this rule shall be limited to what is sufficient to deter repetition of

16  such conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(2).

17  Reeps argues that Plaintiff's Complaint violates Rule 11 because Counts Seven

18  through Twelve are frivolous.  Reeps's sole argument to support her claim is that "[t]he

19  FCRA . . . only grants a private right of action against 'credit reporting agencies.'"  (#97.)

20  However, as noted above, Reeps's contention is not entirely correct.  The FCRA does allow a

21  private cause of action against three specific types of defendants—CRAs, users, and

22  furnishers of credit information.  *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d

23

24

25  **Page 18 of  20**

1057, 1060 (9th Cir. 2002).  Although Plaintiff may not have sufficiently established his

allegations in Counts Seven through Twelve as discussed above, he does appear to bring his

action under a belief that he can do so, and not solely to harass Reeps.  Accordingly,

Plaintiff's actions do not merit sanctions under Rule 11.

### F.    Plaintiff's Countermotion for Sanctions

In response to Reeps's Motion for Sanctions, Plaintiff filed his own Countermotion

for Sanctions.  (#108.)  Plaintiff brings his motion pursuant to Rule 11.  However, Plaintiff's

entire Motion is four lines, and he fails to present any evidence to support his request.

Plaintiff has failed to demonstrate that Reeps filed her Motion for Sanctions for an improper

purpose.  Accordingly, the Court denies Plaintiff's Countermotion for Sanctions.

### CONCLUSION

IT IS HEREBY ORDERED that the following motions are *denied*: Plaintiff's Motion

for Default Judgment and to Disqualify Beckley Singleton, Chtd. (#66); Plaintiff's Motion to

Stay Proceedings (#110); Defendant Reeps's Rule 11 Motion for Sanctions (#97); and

Plaintiff's Countermotion for Rule 11 Sanctions (#108).

IT IS ALSO HEREBY ORDERED that Defendant TransUnion's Countermotion for

Sanctions (#85) is *granted* in the amount of $250.00.  Plaintiff shall have thirty days form the

date of this Order to pay such sanctions.

IT IS FURTHER ORDERED that Defendant Reeps's Motion for Judgment on the

Pleadings (#96) is *granted* as to Counts Seven and Eight as they relate to any claims under

FCRA § 1681s-2(a) and *granted with leave to amend* as to Counts Seven and Eight as

described above.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IT IS FURTHER ORDERED that Defendant Reeps's Motion for Judgment on the

Pleadings (#96) is *granted with leave to amend* as to Counts Nine through Twelve as

discussed above.   Plaintiff shall have fifteen days from the date of this Order to amend his

Complaint.

DATED: <u>January 18, 2007.</u>

_____

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

Page 20 of  20